Bochetto / Lentz P.C.

George Bochetto†^
Gavin P. Lentz*
Jeffrey W. Ogren*
David P. Heim*
Vincent van Laar*
Bryan R. Lentz*
John A. O'Connell*•
Kiersty DeGroote**
Kean C. Maynard*
Ryan T. Kirk
Brett Stander*

Albert M. Belmont, III*
Michael J. McCarrie
*of Counsel*

1524 Locust Street
Philadelphia, PA 19102
215-735-3900
Fax: 215-735-2455

203 High Street
Mt. Holly, NJ 08060
856-722-9595
Fax: 856-722-5511

10 Beatty Road
Suite 202
Media, PA 19063
484-443-8232
Fax: 484-442-8238

* Admitted to the New Jersey Bar
† Admitted to the New York Bar
• Admitted to the the Virginia Bar
^ Admitted to the D.C. Bar
• LL.M. in Taxation

PRACTICE DEDICATED TO LITIGATION AND NEGOTIATION MATTERS

**bochettoandlentz.com**

**David P. Heim, *Esquire***
*Partner*
dheim@bochettoandlentz.com

***Please send all Mail to the Philadelphia Office***

Any opposition to this letter-motion shall be filed on the docket by **August 5, 2026**. I do not anticipate granting extensions to this deadline absent very good cause shown.

If Mr. Harmon wishes to file any opposition, he should send his opposition to the Court by regular mail to Pro Se Intake Unit, 500 Pearl Street, Room 205, New York, NY 10007 or by email to ProSe@nysd.uscourts.gov; if he chooses email, he must attach the letter to his email in .pdf form.

Dated: July 22, 2026
New York, NY

SO ORDERED
[signature]
ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

July 21, 2026

**VIA ECF**
Hon. Robyn F. Tarnofsky
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: Verner v. Harmon, et al., No. 1:25-cv-06530 (JHR)(RFT) — Request to Enforce the Court's Order Directing Deposit of Disputed Settlement Proceeds, for Appointment of a Neutral Escrow Agent, and for Sanctions Against Plaintiff Paul W. Verner, Esq.**

Dear Magistrate Judge Tarnofsky:

This firm represents Defendants, Counterclaimants, and Cross Claimants Kevon Glickman, Kevon Glickman Law, LLC, Bernard Max Resnick, and Bernard M. Resnick, Esq., P.C. (collectively, the "Attorney Defendants") in the above-referenced interpleader action. We write, with the Court's leave for this format in light of its ancillary supervision of the settlement proceeds at issue, to request that the Court (1) enforce its June 11, 2026 Order (ECF No. 52), as twice extended, directing Plaintiff Paul W. Verner, Esq. to deposit the disputed settlement proceeds he currently holds in his attorney trust account into the Court's registry, or, in the alternative, appoint a neutral escrow agent; and (2) sanction Mr. Verner, under 28 U.S.C. § 1927 and the Court's inherent authority, for his continued noncompliance with that Order and for his interference with a settlement between Mr. Harmon and Mr. Glickman while he has a personal stake in the same disputed fund — a stake his continued personal custody of the fund allows him to protect and satisfy ahead of the Attorney Defendants' competing claims.

## I. Background

Mr. Verner commenced this interpleader action as the self-designated "stakeholder" holding settlement proceeds arising from *Harmon, et al. v. Mosley, et al.*, No. 1:23-cv-04225 (JHR)(RFT), pending distribution among Defendant Leslie Jerome Harmon and the Attorney Defendants. (Compl., ECF No. 1.) On June 11, 2026, the Court ordered Mr. Verner to deposit the disputed fund — $365,055.00 — into the Court's registry, or to show cause why the interpleader complaint should not be dismissed, by June 16, 2026. (ECF No. 52.) The Court twice extended that deadline: *sua sponte*, to June 22, 2026 (ECF No. 53), and then to June 30, 2026 (ECF No. 55).

Mr. Verner did not deposit the fund by any of these dates. Instead, on June 30, 2026, he moved for still more time — to July 21, 2026 — and for permission to secure a reduced amount, $200,000, by surety bond rather than the full $365,055.00 ordered, or, in the alternative, for leave to voluntarily dismiss his own interpleader complaint. (ECF No. 57.)

On July 8, 2026, the Court issued a Report and Recommendation: (1) denying Mr. Verner's request for further time and for a reduced deposit amount, (2) denying his request for voluntary dismissal, and (3) recommending that the District Court *sua sponte* dismiss the interpleader complaint for lack of subject matter jurisdiction based on Mr. Verner's continued failure to satisfy the deposit requirement of 28 U.S.C. § 1335. (ECF No. 63 at 10–13.)

The Report and Recommendation also recommends that the Attorney Defendants' motion to enforce a charging lien be granted as to Mr. Glickman and denied as to Mr. Resnick, denies without prejudice the motion to determine the amount of attorneys' fees owed, and recommends that Mr. Verner's own motion for release of the funds be denied. (Id. at 16–22.) Because the Attorney Defendants' Answer (ECF No. 56) asserts a counterclaim against Mr. Verner and a crossclaim against Mr. Harmon, dismissal of the interpleader complaint — even if adopted — would not moot the Court's ancillary authority over the res or the relief requested here.

Critically, although Mr. Verner filed this action as a nominally disinterested stakeholder, his own reply papers make clear that he has been advocating the merits of Mr. Harmon's position against the Attorney Defendants — the very dispute over entitlement to the funds he holds. For example, Mr. Verner has argued that "there is zero question of fact" that Mr. Glickman's contingency recovery "is limited to 7%," has characterized the Attorney Defendants' positions as "vindictive," "specious," and advanced "to exert leverage," and has offered his own view of how much money should be reserved to "secure Mr. Glickman's hourly fee component." (Reply Decl. of Paul W. Verner, ECF No. 40, ¶¶ 8, 9, 17, 19, 25.) He has likewise represented to the Court, unprompted, the percentage split he believes should govern any interim reserve. (Id. ¶ 8.)

The record also shows that, notwithstanding his professed neutrality, Mr. Verner has taken affirmative steps to condition and delay a settlement his own client wished to pursue directly with Mr. Glickman — while Mr. Verner himself holds an unpaid personal fee claim against the very fund at issue. That conduct is set out in Section IV, below.

## II. The Court Has Authority to Order — and Has Already Ordered — Deposit of the Disputed Funds

The Court need not decide, in the first instance, whether it has authority to order deposit of the disputed fund: it has already done so. (ECF No. 52.) What follows confirms that authority and explains why continued enforcement — not reconsideration — is the only question now before the Court.

Federal Rule of Civil Procedure 67 authorizes a court, on motion and notice, to direct that disputed funds -- "the disposition of a sum of money" -- be deposited with the court pending resolution of competing claims. Fed. R. Civ. P. 67(a). This authority is the direct descendant of the interpleader statute itself, 28 U.S.C. § 1335, and this District's Local Civil Rule 67.1(c) specifically contemplates the deposit of interpleader funds as a "Disputed Ownership Fund" administered through the Court Registry Investment System. S.D.N.Y. Local Civ. R. 67.1(c).

Deposit under Rule 67 does not require that any party disclaim an interest in the funds; it is available precisely because the funds are the subject of adverse claims that neither the Court nor the claimants can trust a self-interested custodian to resolve.

Despite the Magistrate's recommendation to dismiss Mr. Verner's interpleader claims for his failure to deposit the disputed funds, the Court still has jurisdiction to compel Mr. Verner to do so on multiple grounds.

First, the Second Circuit in *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir. 1977) found that a court's "jurisdiction over the distribution of the settlement funds can be sustained as ancillary to jurisdiction over the claim itself." Where, as here, the dispute "has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit," an order to deposit settlement funds were "clearly ancillary to its approval of the settlement in the case." *Id.* at 844. *Grimes*, like this case, involved a fee dispute between two attorneys over settlement funds from a case in the Southern District of New York under diversity jurisdiction. The district court granted a motion to "require deposit of the settlement funds in the court's registry and supervise the distribution of said funds." The Second Circuit affirmed, rejecting the challenge to the district court's jurisdiction to order the deposit of the disputed settlement funds. Rule 67 is the vehicle through which the Court can exercise this ancillary jurisdiction.

Similarly, here, the Court had diversity jurisdiction over *Harmon, et al. v. Mosley, et al.*, No. 1:23-cv-04225 and facilitated the settlement in that underlying matter. Significantly, the settlement agreement in that matter included a provision that the Court retained jurisdiction over the Settlement Agreement, which was filed of record in the *Harmon, et al. v. Mosely*, case at ECF#298-1 and ECF# 304-2 and 317. Thus, similar to *Grimes*, the Court's ancillary jurisdiction provides it with authority over the settlement funds here, and like the district court in *Grimes*, this Court too has ancillary jurisdiction to order the deposit of the disputed funds by Mr. Verner.

Second, the Magistrate's Recommendation for the dismissal of Mr. Verner's interpleader claim relied exclusively on Mr. Verner's *statutory* interpleader claim in Count I of the Complaint pursuant to 28 U.S.C. § 1335. The Recommendation is correct as the statutory interpleader requires the deposit of the disputed funds into Court as a prerequisite to jurisdiction. *Madison Stock Transfer v. Exlites*, 368 F. Supp. 3d 460, 485-86 (E.D.N.Y. 2019) ("the deposit requirement is not optional," but rather "it is the price of entry into federal court.") Attorney Defendants agree with the Magistrate's Recommendation in this regard.

But the Magistrate's Recommendation did not address Mr. Verner's Rule 22 interpleader – asserted in Count II of the Complaint -- which, unlike the statutory interpleader, does *not* carry a jurisdictional requirement of depositing the disputed funds into court. As the district court in *Madison Stock* noted in a Rule 22 interpleader case, "the stakeholder is not obligated to deposit either the amount in controversy or a bond with the court, although the court may nevertheless order a deposit pursuant to its general equitable powers or Rule 67." *Madison Stock*, 368 F.Supp.3d at 477 n. 17; *see also John v. Sotheby's*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) ("deposit of the asset is not a jurisdictional prerequisite for rule interpleader . . . Nonetheless, this Court has discretion to permit such a deposit under Rule 67.") Thus, for the Rule 22 interpleader claim asserted in Count II, it was not a jurisdictional defect for Mr. Verner to fail to deposit the funds – that claim should still be a live claim – and the Court, pursuant to its "general equitable powers" or Rule 67, has authority to order Mr. Verner to deposit the disputed funds. *Madison Stock*, 368 F.Supp.3d at 477 n. 17; *John v. Sotheby's*, 141 F.R.D. at 33.

## III. Mr. Verner's Dual Role Is an Irreconcilable Conflict That Disqualifies Him From Continued Unilateral Custody

An attorney holding disputed funds in trust owes fiduciary duties of neutrality to all claimants with an interest in those funds. See N.Y. RPC 1.15 (safekeeping of funds and property of others). Where the custodian is simultaneously counsel of record for one of the competing claimants — and is on the docket actively arguing the merits of that claimant's entitlement to the very funds in his possession — the custodian's personal and professional loyalties are structurally incompatible with continued sole control of the res. Mr. Verner is Mr. Harmon's litigation counsel of record in the underlying *Harmon v. Mosley* action, is compensated out of the same settlement corpus (Reply Decl., ECF No. 40, ¶ 21), and has represented to this Court that he intends to keep billing Mr. Harmon "for some of my time spent handling the stakeholder responsibilities and in bringing this action" (id.). He is, by his own account, the only participant in this dispute who benefits financially the longer it remains unresolved and in his custody. (Id. ("I am the only person financially benefiting if the fee disputes become even more protracted.").)

This is not a case of a truly disinterested stakeholder awaiting judicial guidance. It is a case in which counsel for one claimant has retained physical and legal control of a disputed fund while litigating, on the papers, why the other claimants are entitled to less of it. The Attorney Defendants respectfully submit that this arrangement cannot continue without the

Court's direct supervision of the corpus, regardless of how the pending quantum meruit issues are ultimately resolved. Indeed, Mr. Verner's insistence on retaining personal, unilateral custody of the fund — rather than depositing it as this Court has ordered — is not incidental to his admitted financial stake in it; it is the mechanism that protects that stake. So long as the fund remains in his own attorney trust account rather than the Court's registry, Mr. Verner remains positioned to satisfy his own unpaid fee claim against Mr. Harmon from that fund, on his own timetable and without regard to the Attorney Defendants' competing claims. Depositing the fund with the Court, by contrast, would subject Mr. Verner's own fee claim to the same judicial oversight he asks this Court to impose on everyone else's.

### IV. <u>Mr. Verner Has Used His Custody of the Disputed Fund to Condition and Delay a Settlement Between Mr. Harmon and Mr. Glickman</u>

Exhibits to Mr. Verner's own June 30, 2026 Letter-Motion (ECF No. 57) confirm that Mr. Harmon was prepared to resolve Mr. Glickman's fee claim, the larger of the two Attorney Defendants' claims, directly with Mr. Glickman for $90,000, in exchange for "a full and final release" of all claims between them. (ECF No. 57 at 5.) Mr. Harmon described this as a considered, informed choice, not an impulsive one: he acknowledged he was "taking a substantial risk" because he would be relying on a third party to "honor his commitment to pay the remaining back settlement payments," and recognized "a real possibility that he may not pay any future royalties," which could mean "no recovery at all." (*Id.*) He nonetheless concluded that a prompt, certain resolution was preferable to further delay, additional legal fees, and continued uncertainty. (*Id.*)

Mr. Verner, however, intervened, even though he admittedly does *not* represent Mr. Harmon with respect to the fee dispute and interpleader action. On June 29, 2026, after learning that Mr. Harmon had "resolved [Mr. Glickman] on a total sum of money," Mr. Verner emailed the Attorney Defendants' counsel imposing his own conditions on any release of funds to Mr. Glickman, asserting that any money "agreed to go to [Mr. Glickman]" was "not able to be fronted before [Mr. Harmon] receives it." (ECF No. 57 at 50, 65.) When counsel for the Attorney Defendants objected — noting that Mr. Verner had "acknowledged in writing (including motions filed in court)" a conflict of interest, and that Mr. Harmon's counsel of record on the fee dispute was Scott Reynolds, not Mr. Verner — Mr. Verner responded that he "still represent[s] [Mr. Harmon] in the settlement" and insisted that both defendants "cease direct communications with" Mr. Harmon. (*Id*. at 9, 33.) He further demanded a stipulation to "adjourn any deposits/bonds" — the very obligation this Court had ordered — suggesting a two-week delay. (*Id.* at 9.) Mr. Glickman responded directly that "[n]o adjournment [wa]s necessary" and that Mr. Harmon contacted Mr. Glickman directly, which was Mr. Harmon's "prerogative." (*Id.* at 8, 31.)

This sequence is difficult to reconcile with a disinterested stakeholder's role. Mr. Verner has, by his own admission, an unpaid fee claim against the same corpus (see Section III, above), and is "the only person financially benefiting if the fee disputes become even more protracted." (Reply Decl., ECF No. 40, ¶ 21.) A resolution of Mr. Glickman's claim for $90,000 — well below the $279,060 Mr. Glickman has claimed, and a substantial fraction of the

$365,055.00 total the Attorney Defendants have been required to secure — would have reduced the disputed fund and shortened this litigation, which correspondingly would have reduced Mr. Verner's own opportunity to continue billing Mr. Harmon "for some of my time spent handling the stakeholder responsibilities and in bringing this action." (*Id.*) Instead of allowing Mr. Harmon to settle his dispute with Mr. Glickman, Mr. Verner conditioned that resolution on Mr. Verner's consent and sought, in the same breath, to delay the deposit this Court had ordered. Each of these interventions serves the same, single, self-interested objective: keeping the fund in Mr. Verner's own hands, where he — and not the Court — decides when and how his own outstanding fee gets paid from it.

## IV. The Requested Relief Is Modest, Protective, and Consistent With the Court's Ancillary Jurisdiction

The Court has already exercised supervisory authority over the underlying settlement in *Harmon v. Mosley*, and the interpleader action was brought precisely to invoke the Court's authority over the disputed proceeds. The Court has jurisdiction over the settlement from the *Harmon v. Mosely* case and as such has ancillary jurisdiction to order Mr. Verner to deposit the disputed funds pursuant to *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir. 1977) Separately and independently, this Court has original jurisdiction over the interpleader action itself and the res is already before it; a Rule 67 deposit order is a routine incident of that jurisdiction and does not depend on ancillary jurisdiction.

Because the disposition of a quantum meruit hearing on the Attorney Defendants' claims, if required, may not be reached for quite some time after discovery, the Attorney Defendants respectfully submit that the status quo — sole custody by conflicted counsel for the opposing claimant — should not persist for the duration. Depositing the funds into the Court's interest-bearing registry account (or, in the alternative, placing them with a neutral, court-approved escrow agent on terms acceptable to all parties) protects every party's ultimate recovery, removes any appearance that the corpus is being used as leverage in the fee dispute, and imposes no prejudice on Mr. Harmon, since the funds would continue to earn interest for whichever party is ultimately entitled to them. It also forecloses the one outcome Mr. Verner's continued custody currently makes possible: that he alone could decide to satisfy his own unpaid fee claim from the fund, on his own schedule, without the same judicial oversight he would have this Court apply to every other claimant's recovery.

## VI. Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority Are Warranted

Separately, the Attorney Defendants respectfully submit that Mr. Verner's conduct warrants sanctions. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A court's inherent authority provides an independent basis for the same relief upon a finding of bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

Mr. Verner filed this interpleader action for the express purpose of depositing the disputed funds. But he has now missed three Court-ordered deadlines to deposit the disputed funds — June 16, June 22, and June 30, 2026 — and, as of this writing, has still not done so, notwithstanding the Court's July 8, 2026 Report and Recommendation rejecting his request for still more time. (ECF No. 63 at 10.) At the same time, as set out in Section IV above, he used his position to condition and delay a resolution between his own client and Mr. Glickman, and to seek an adjournment of the very deposit obligation he was separately asking this Court to excuse. The combination — noncompliance with a direct court order, coupled with self-interested interference in a settlement involving the same res — has required the Attorney Defendants to incur legal fees they would not otherwise have incurred, both in seeking to enforce the deposit order and in responding to Mr. Verner's insertion of himself into the Harmon-Glickman settlement discussions.

The Attorney Defendants therefore request that the Court award them their reasonable attorneys' fees and costs incurred in connection with (a) Mr. Verner's noncompliance with the Court's June 11, 2026 Order, as extended, and (b) his June 29, 2026 communications described in Section IV above, in an amount to be established by supplemental declaration if the Court is inclined to grant this relief.

## VII. Relief Requested

For the foregoing reasons, the Attorney Defendants respectfully request that the Court:

(1) enforce its June 11, 2026 Order (ECF No. 52), as extended, and direct Plaintiff Paul W. Verner, Esq. to deposit the disputed settlement proceeds currently held in his IOLTA/attorney trust account into the Court's registry pursuant to Fed. R. Civ. P. 67 and S.D.N.Y. Local Civil Rule 67.1(c), or, in the alternative, appoint a neutral, disinterested escrow agent acceptable to all parties, and, if the interpleader complaint is dismissed, order that deposit as security in connection with the Attorney Defendants' surviving counterclaim and crossclaim;

(2) clarify whether Mr. Verner appears in this action as a disinterested interpleader stakeholder or as advocate for Defendant Harmon, and, if the latter, address the propriety of his continued unilateral custody of the res;

(3) award the Attorney Defendants their reasonable attorneys' fees and costs incurred as a result of Mr. Verner's noncompliance with the Court's deposit order and his interference with the Harmon-Glickman settlement discussions, under 28 U.S.C. § 1927 and the Court's inherent authority, in an amount to be established by supplemental submission; and

We thank the Court for its attention to this matter and remain available at the Court's convenience.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

By: *__/s/ David P. Heim__________*
David P. Heim, Esq.
*Counsel for Defendants*
*Kevon Glickman, Kevon Glickman Law, LLC,*
*Bernard Max Resnick, and Bernard M. Resnick, Esq., P.C.*

cc: All counsel of record (via ECF)

Sincerely,

**BOCHETTO & LENTZ, P.C.**

By: ____________________________
David P. Heim